# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JUDITH K. KELLEY,

        Plaintiff,

vs.                                                                       No. CIV 03-507 JB/ACT

CITY OF ALBUQUERQUE,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff Judith Kelley's Application for

Attorney Fees, filed January 21, 2005 (Doc. 93). The Court held a hearing on this application on

October 21, 2005. The primary issues are whether the Court should adjust the fee award: (i) to take

account of lower market rates in comparable cases; (ii) to reduce the number of billed hours that the

Court should consider reasonable; and (iii) to exclude expenses. Because the Court concludes that

the rates, hours, and expenses which Steven K. Sanders and Donald L. Sears, Jr. have billed are

reasonable, the Court awards the attorneys $127,147.52.

## FACTUAL BACKGROUND

Kelley's two attorneys in this matter are Steven K. Sanders and Donald Sears. Sanders has

been licensed to practice law in the State of New Mexico since October 1974. See Unsworn

Declaration of Steven K. Sanders, Under Penalty of Perjury in Support of Application for Attorney

Fees ¶ 1, at 1 (executed January 20, 2005). He is admitted to practice law in the United States

District Court for the District of New Mexico, the State of Texas, the United States District Courts

for the Western and Northern Districts of Texas, the United States Court of Appeals for the Federal,

Fifth, and Tenth Circuits, and the Supreme Court of the United States.  See id.  Sanders has been practicing law since October 1974.  See id.  Sanders has been lead counsel in more than 100 jury trials.  See id ¶ 7, at 6-7.  He graduated cum laude from the University of New Mexico School of Law and served as Editor-in-Chief of two law journals.  See id. ¶ 8, at 7.  He was awarded the Order of the Coif and has published three legal articles in the New Mexico Law Review.  See id.  He represented municipal or county governments in a full-time capacity between 1975 and 1987.  See id. ¶¶ 9-10, at 7.  He primarily handles federal litigation and plaintiffs' civil rights cases.  See id. ¶ 15, at 8.

Sears has been licensed to practice law in the State of New Mexico since October 1994.  See Affidavit of Donald Sears, Jr. in Support of Application for Attorney Fees ¶ 1, at 1.  He is also admitted to practice in the United States District Court for the District of New Mexico and the United States Court of Appeals for the Tenth Circuit.  See id. ¶ 2, at 1.  He has tried cases before the New Mexico Personnel Department, the New Mexico Labor Department, and the Workers' Compensation Administration on personnel and other work related issues.  See id. ¶ 3, at 2.  About sixty percent of his case load involves personnel matters.  See id.

## PROCEDURAL BACKGROUND

Kelley filed her Complaint in the Second Judicial District of the State of New Mexico on March 14, 2003, alleging that the Defendant City of Albuquerque ("the City") fired her in violation of the New Mexico Human Rights Act and Title VII and terminated her because she was a white woman.  See Complaint for Violation of the New Mexico Human Rights Act ¶¶ 10-21, at 2-3.  The City removed to the United States District Court for the District of New Mexico on April 30, 2003, because the United States had original jurisdiction over Kelley's Title VII claim.  See Notice of

Removal at 1, filed April 30, 2003 (Doc. 1).

Subsequently, Kelley filed her First Amended Complaint for Retaliation and Violation of Equal Protection Clause of United States Constitution ("First Amended Complaint"). The only substantive change that the First Amended Complaint offered was to add equal protection and conspiracy claims. Compare Complaint for Violation of the New Mexico Human Rights Act ¶¶ 10-21, at 2-3, with First Amended Complaint ¶¶ 12-34, at 3-6.

Of the three claims that Kelley presented to the Court -- retaliation, gender discrimination, and equal protection -- only one ultimately survived the summary judgment stage. The Court granted the City summary judgment on the equal protection and conspiracy claims because Kelley had failed to show that others similarly situated were treated differently from her and, without this proof on the underlying equal protection violation, thus failed to show a genuine issue with regard to her conspiracy claim as well. See Memorandum Opinion and Order at 47-49, filed December 30, 2004 (Doc. 74). With retaliation the only remaining claim, it was the only issue at trial. Sanders was lead counsel at the trial.

On January 6, 2005, the jury found in Kelley's favor and against the City for violation of her civil rights under Title VII and the New Mexico Human Rights Act. See Special Jury Verdict Form at 1-3, filed January 6, 2005 (Doc. 86). The Court entered final judgment in the amount of $372,975.90. See Final Judgment at 1, filed January 6, 2005 (Doc. 87).

Kelley submits this application for costs and fees in accordance with the jury's decision. See Application for Attorney Fees at 1. She requests an award of attorney fees, expenses, and court costs for the work that Sanders and Sears performed. See id.

In support of her application, she submits her attorneys' time records, an unsworn declaration

under penalty of perjury that Sanders has signed, an affidavit by Sears, and a curriculum vitae for each attorney.  Kelley requests attorney fees and litigation costs for Sanders at the rate of $250.00 per hour and for Sears at the rate of $200.00 per hour for a total fee award of $130,300.37.  See id.  Sanders' time records indicate that he worked 443.25 hours on this matter, deducting 16.5 hours for time spent on the class-of-one issues, including time spent on amending the complaint and time spent on the motion for summary judgment on the class-of-one issues, for a total of 426.75 hours.  See Time Records for Steven K. Sanders, Attorney for Plaintiff ("Sanders Time Records") at 16.  Sanders also adds $7,201.41 for New Mexico gross receipts tax and $306.34 for costs, bringing his total fee to $114,195.24.[1]  See id.

Sears' time records indicate that he worked a total of 70.75 hours on this case.  See Time Records for Donald R. Sears, Jr., Attorney for Plaintiff Judy K. Kelley ("Sears Time Records") at 2. Sears adds $955.13 for New Mexico gross receipts tax, bringing his total attorney fees to $15,105.13.

Kelley asserts that, before filing this motion, she made a good faith effort to resolve this matter.  See Memorandum in Support of Application for Attorney Fees, Expenses and Costs at 7, filed January 21, 2005 (Doc. 94).  The City indicated to Kelley that it would not agree to an award of costs or attorney fees.  See id.  Because the City contests Kelley's fees and costs, and because the City filed a motion for Judgment as a Matter of Law, Kelley represents that she will submit a supplemental affidavit and application for attorney fees at an appropriate time.  See id.

The City responds that the Court should reduce Kelley's request for attorney fees because

---

[1] According to the Court's calculation, there is a slight discrepancy in this total.  Adding up these figures yields a total of $114,195.25, which is one cent higher than the amount requested by Sanders.  The Court traces the error in Kelley's briefing back to the addition of the total attorney fees requested and the New Mexico Gross Receipts Tax, which should have yielded $113,888.91.  See Sanders Time Records at 16.  Instead, Kelley's brief arrives at the figure of $113,888.90.  See id.

Sanders' and Sears' hourly rates are unreasonable.  See Response to Application for Attorney's Fees ("Response") at 1, filed February 8, 2005 (Doc. 98).  The City also objects that both attorneys have included multiple tasks as one entry in their billing records.  See id. at 5.  Furthermore, the City maintains that some of the entries in the time records reflect work on Kelley's unsuccessful equal protection and conspiracy claims.  See id. at 6-7.  The City would reduce the 62.75 hours that Kelley's attorneys claimed to have spent researching and briefing the Motion for Summary Judgment by one-third.  See id. at 7.  The City believes that the 62 hours Kelley's attorneys spent in preparing a response should be reduced by 20.9 hours and that time spent directing staff should be eliminated.  See id. at 8.  The City contends that some of the time billed by the lawyers separately are duplicative.  See id. at 8-9.  Finally, the City wants the Court to decline expenses for a private investigator.  See id. at 9.

In their reply, Kelley asserts that she has already deducted time spent on unsuccessful claims by reducing the attorneys' total hours expended on this case by 16.5 hours.  See Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Attorney Fees, Expenses and Costs ("Reply") at 4, filed February 24, 2005 (Doc. 106).  Kelley admitted that an entry of 9.5 hours for Sears for January 5, 2005, was accidentally counted twice.  See id. at 5.  Deducting 9.5 hours from Sears' total leads to 61.25 hours.  See id.  The total fee for Sears then comes to $13,076.88, which includes $826.88 for New Mexico gross receipts tax.  See id.  Finally, Kelley retorts that the cost of a private investigator is "normally charged by lawyers to their clients" and that the Court heard testimony concerning the City's hiring of a private investigator.  See id. at 6.

In sum, Kelley requests the following fees and costs:

Steven K. Sanders:

| | | |
|---|---|---|
| Total Attorney Fees: | 426.75 hrs (443.25 hrs - 16.5 hrs) x $250.00 = | $106,687.50 |
| N.M. G.R. Tax: | 6.75% x $106,687.50 = | $7,201.41 |
| Other Costs: | | |
|     Postage: | | $37.00 |
|     Copies: | | $71.23 |
|     Private Investigator: | | $198.11 |
| Grand Total: | | $114,195.24 |

<u>Donald R. Sears, Jr.</u>

| | | |
|---|---|---|
| Total Attorney Fees: | 61.25 hrs (70.75 hrs - 9.5 hrs ) x $200.00 = | $12,250.00 |
| N.M. G.R. Tax: | 6.75% x $12,250.00 = | $826.88 |
| Grand Total: | | $13,076.88 |

Total for Sanders and Sears: $114,195.24 + $13,076.88 =          $127,272.12

## LAW REGARDING 42 U.S.C. § 2000e-5(k)

Pursuant to 42 U.S.C. § 2000e-5, an award of attorney fees is appropriate to the prevailing party in a Title VII case. Under the provisions of 42 U.S.C. § 2000e-5(k), the prevailing party in a Title VII proceeding may be allowed "reasonable attorney's fee[s]." Similarly, N.M.S.A. 1978, § 28-1-13D provides that, "if the complainant prevails, the court in its discretion may allow actual damages and reasonable attorney fees. . . ."

## I.   POLICY BEHIND AWARD OF FEES.

Before examining the fee request, it is important to remember that the purpose behind allowing private individuals to bring lawsuits is not only to secure individual justice for a wrong, but to vindicate the interest of American society as a whole in assuring that unlawful discrimination does not pollute equality of opportunity in the workplace. See Gudenkauf v. Stauffer Communications, Inc., 158 F.3d 1074 (10th Cir. 1998). Thus, in Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), the Supreme Court of the United States stated that, in awarding attorney fees, the court

should consider: "First, . . . the plaintiff is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.'" Id. at 418 (quoting Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968)).  "Second, when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law."  See id.

In Gudenkauf v. Stauffer Communications, Inc., the United States Court of Appeals for the Tenth Circuit analyzed the purpose of fee awards to private lawyers:

> In explaining the proposed legislation to overturn [Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)], the Committee stated "it is important to remember the dual purpose of private enforcement of Title VII.  On the one hand, the object is to make whole the individual victims of unlawful discrimination. . . .  But this is only part of it.  *The individual Title VII litigant acts as a 'private attorney general' to vindicate the precious rights secured by that statute.  It is in the interest of American society as a whole to assure that equality of opportunity in the workplace is not polluted by unlawful discrimination.  Even the smallest victory advances that interest.*"
>
> The legislative history also sheds light on Congressional intent with respect to the award of attorney's fees to successful civil rights litigants.  "Both of the statutory goals described above – encouraging private enforcement and making victims whole – are dependent upon the ability of such victims to find and retain competent counsel to handle their claims.  Title VII's fee-shifting provision makes this possible."  Nonetheless, the Committee observed with alarm that "[d]espite Title VII's fee-shifting provision, the evidence suggests that plaintiffs are encountering substantial difficulty in obtaining legal representation."
>
> "Several recent Supreme Court decisions have contributed to the difficulty discrimination victims currently face in finding attorneys who will take their Title VII cases, by making the recovery of attorneys' fees uncertain even for the most meritorious claims. . . .
>
> The Committee reaffirms the policy that unless discrimination victims can find lawyers to take their cases, they cannot be made whole for their injuries, employers will not be held responsible for violations of the statute, and the compelling public interest in eliminating discrimination cannot be served."

Gudenkauf v. Stauffer Communications, Inc., 158 F.3d at 1080-1081 (citations omitted)(emphasis in original).

The federal philosophy of awarding attorney fees is consistent with the Supreme Court of New Mexico's decision in Lucero v. Aladdin Beauty Colls., Inc., 117 N.M. 269, 271, 871 P.2d 365, 367 (1994)(explaining that one of the purposes behind awarding attorney fees in New Mexico Human Rights Act cases "is to encourage lawyers to take cases involving alleged violations of the Act" and citing with approval, Jones v. Wilkinson, 800 F.2d 989, 991 (10th Cir. 1986), for stating the "policies for awarding attorney's fees in federal civil rights cases," aff'd, 480 U.S. 926 (1987)).  As indicated in Lucero, the New Mexico Supreme Court wants to encourage lawyers to take on these cases and pursue protection of citizens' civil rights.  See id.

## II.   DISCRETIONARY V. MANDATORY.

The court, in its discretion, may allow the prevailing party a reasonable attorney fee.  See 42 U.S.C. § 2000e-5k.  The applicant for a fee has "'the burden of showing that the claimed rate and number of hours are reasonable.'"  See Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998)(citation omitted).

Although the attorney fee statutes state that an award of fees is discretionary, both court opinions and legislative history show the clear intent of Congress to provide teeth in the enforcement efforts of civil rights claims through an award of attorney fees.  Senator Tunney, one of the sponsors of the federal legislation providing for attorney fees, 42 U.S.C. § 1988, stated:

> But without the availability of counsel fees, these rights exist only on paper.  Private citizens must be given not only the rights to go to court, but also the legal resources. If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated and the entire Nation, not just the individual suffers. . . .  No one expects a policeman, or an officeholder, to pay for the privilege of enforcing the law.  It should be no different for a private citizen.

122 Cong. Rec. 33313 (daily ed. September 29, 1976)(statement of Senator Tunney).

-8-

Even though the statute is discretionary, the consensus of the federal court case law is to award the prevailing plaintiff attorney fees unless very special and unique circumstances exist.  See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)("Accordingly, a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" (citation omitted); Love v. Mayor of City of Cheyenne, Wyo., 620 F.2d 235, 236 (10th Cir. 1980)("A prevailing party in a civil rights action such as this is ordinarily entitled to reasonable attorney's fees . . . unless special circumstances would render such an award unjust." (citation omitted)); Ralph V. Seep, Annotation, "What Persons or Entities May Be Liable to Pay Attorney's Fees Awarded Under Civil Rights Attorney's Fees Awards Act of 1976," 106 A.L.R. Fed. 636 (1992).  The Tenth Circuit has construed the special circumstances exception very narrowly, and there must be a strong showing of a circumstance justifying a denial of attorney fees.  See Wilson v. Stocker, 819 F.2d 943, 951 (10th Cir. 1987)("[W]e have held that the district court's discretion to deny fees to a prevailing plaintiff is quite narrow.  'There are few cases denying attorney fees to a prevailing party as unjust under § 1988.'" (quoting J & J Anderson, Inc. v. Town of Erie, 767 F.2d 1469, 1474 (10th Cir. 1985))).

## III.    CALCULATION OF AWARD.

When determining a reasonable fee, a court must first calculate the lodestar, which is "the reasonable number of hours spent on the litigation multiplied by a reasonable hourly rate."  See United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000)(citation omitted).  Of course, the starting point in any attorney fee award is the number of hours that the prevailing attorney reasonably worked:

> To determine a reasonable attorneys fee, the district court must arrive at a lodestar figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate. [T]he fee applicant bears the burden of establishing

entitlement to an award and documenting the appropriate hours expended and hourly rates.

Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998)(internal quotations omitted)(citations omitted).

A judge should approach the issue of reasonableness like a senior partner reviewing the billing of subordinate attorneys.  See Robinson v. City of Edmond, 160 F.3d at 1281 (citation omitted). Further, district courts must articulate specific reasons for fee awards to give appellate courts an adequate basis for review in the event an award is appealed.  See Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983), overruled on other grounds by Pennsylvania v. Del. Valley Citizens Council for Clean Air, 483 U.S. 711, 715, 717 n.4, 731 (1987).

If attorneys seek fees, they must keep meticulous, contemporaneous time records to present to the court upon request.  Robinson v. City of Edmond, 160 F.3d at 1281 (citing Ramos v. Lamm, 713 F.2d at 553).  These records must reveal all hours for which the attorney seeks compensation and how the attorney allotted those hours to specific tasks.  See id.  (citing Ramos v. Lamm, 713 F.2d at 553).  A court may discount requested hours if the time records are imprecise.  See id.

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  See Hensley v. Eckerhart, 461 U.S. at 433.  "The district court should give special scrutiny to any reconstructions or estimates of time expended and make reductions when appropriate."  See Ramos v. Lamm, 713 F.2d at 553 n.2 (citing Hensley v. Eckerhart, 461 U.S. at 433).  With respect to legal research performed, for example, the application must provide enough information to determine whether the research was related to successful issues and reasonably necessary to the case.  See Case v. United Sch. Dist. No. 233, 157 F.3d at 1252.

Additionally, prevailing parties must make a good-faith effort to exclude excessive, redundant, or unnecessary hours from their fee request.  See Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995)(citing Hensley v. Eckerhart, 461 U.S. at 434).  The court may reduce a lodestar calculation on the ground that a prevailing party has achieved only partial success.  See Hensley v. Eckerhart, 461 U.S. at 435-37.  In Hensley v. Eckerhart, the Supreme Court addressed this issue and stated that the product of reasonable hours times a reasonable rate does not end the inquiry.  See id. at 434.  As the Supreme Court explained, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'"  See id.  This factor is important when a plaintiff "prevails" even though he succeeded on only some of his claims for relief.  See id.  Importantly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved, when distinctly different claims for relief are based on different facts and legal theories and counsel's work on one claim is unrelated to the work on another claim.  See id. at 434-35.

In Nieto v. Kapoor, then-Judge Vazquez stated:

In Zurcher v. City and County of Denver, 997 F.2d 730 (10th Cir. 1993), an excessive force case, the plaintiffs settled with the individual officer and went to trial against the City and County of Denver.  Denver argued that the plaintiffs should not be awarded the fees used to prosecute the case against the individual officers.  The Tenth Circuit rejected that argument and awarded the full award to plaintiffs' counsel, for two reasons.  The first is that the court found that plaintiffs' claims against the officer were so intertwined with their claims against Denver that had the officer never been named as a defendant, plaintiffs' counsel would have had to expend the necessary time and effort to challenge the constitutionality of Denver's conduct.  The court also found that "when claims are interrelated and the plaintiff obtains excellent results on one of those claims, a fully compensatory fee should usually be awarded."  Citing the Supreme Court, the Tenth Circuit stated: "Many civil rights cases will present only a single claim.  In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours

expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.  Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified."

Nieto v. Kapoor, No. 96cv1225, Memorandum Opinion and Order at 25-26 (D.N.M., June 12, 2001)(Vazquez, J.).

The court should award fees to compensate the plaintiff's attorneys for preparation and successful litigation of their fee application.  See Love v. Mayor of Cheyenne, 620 F.2d at 237 (citation omitted).  See also N.Y State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); Johnson v. Univ. Coll., 706 F.2d 1205, 1207 (11th Cir. 1983);  Jones v. MacMillian Bloedel Containers, Inc., 685 F.2d 236, 239 (8th Cir. 1982); Copeland v. Marshall, 641 F.2d 880, 901 (D.C. Cir. 1980)(en banc); Young v. Kenley, 641 F.2d 192, 195 (4th Cir. 1981); Bond v. Stanton, 630 F.2d 1231, 1235 (7th Cir. 1980); Johnson v. Mississippi, 606 F.2d 635, 638 (5th Cir. 1979); Bagby v. Beal, 606 F.2d 411, 415-16 (3d Cir. 1979); Weisenberger v. Huecker, 593 F.2d 49, 54 (6th Cir. 1979).  Therefore, attorney fees are recoverable, under federal law, for the fee application.

Generally, the more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services, and a court should give particular attention to the possibility of duplication in services.  See Case v. United Sch. Dist. No. 233, 157 F.3d at 1250 (citation omitted). Although the court need not automatically reduce reported hours to adjust for multiple representation, the applicant for fees must justify the presence of more than one lawyer at depositions or hearings.  See id.

The law in the Tenth Circuit does not exclude attorney conferences:

> Defendant states generally that conferences between attorneys should not be allowed. However, this is contrary to what the Tenth Circuit has stated: "[t]ime spent by two attorneys on the same general task is not . . . per se duplicative. Careful preparation often requires collaboration and rehearsal. . . ."

Nieto v. Kapoor, Memorandum Opinion and Order at 16 (citing Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1077 (10th Cir. 1998)).

## IV.   HOURLY RATE.

Congress' findings and policy behind enactment of § 1988 expressed its understanding that federal civil rights litigation was similar to complex antitrust and securities litigation, and entitled to compensation accordingly.  "As originally envisioned by Congress, civil rights attorneys were to be paid on a par with commercial lawyers." Robinson v. Ala. State Dep't of Educ., 727 F. Supp. 1422, 1427 n. 14 (M.D. Ala. 1989)(Thompson, J.)(citation omitted), aff'd, 918 F.2d 183 (11th Cir. 1990). Senate Report No. 94-1011 indicates that Congress intended that courts award, generally, the highest rate charged in the area for complex antitrust and commercial litigation: "'It is intended that the amount of fees awarded under S. 2278 [42 U.S.C. § 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases. . . .'" See Martino v. Carey, 568 F. Supp. 848, 850 (D. Or. 1983)(Redden, J.)(quoting S.Rep. No. 94-1011 at 6 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913).

In setting the hourly rate, a court should establish a rate based on the norm for lawyers of comparable skill and experience in private practice in the area in which the court sits calculated as of the time the court awards the fee.  See Ramos v. Lamm, 413 F.3d at 555.  The hourly rate awarded should also provide sufficient incentive to allow lawyers to "litigate such cases for a living rather than

as occasional charity work." Stokes v. City of Montgomery, 706 F. Supp. 811, 817 (M.D. Ala. 1988)(Thompson, J.).  Additionally, the court should award fees on current rates rather than on historic rates.  See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 726 (10th Cir. 1993)(citations omitted).

Three judges in this district have awarded five separate attorneys $250.00 per hour for attorney fees.  On January 5, 2005, the Honorable Martha Vazquez, Chief United States District Judge, awarded attorney Maureen Sanders and Phil Davis $250.00 per hour each for their work in a civil rights case.  See Lewis v. N.M. Dep't of Health, No. 99cv0021,  Memorandum Opinion and Order at 13-14, 19 (D.N.M. January 5, 2005)(Vazquez, C.J.).  Judge Vazquez also awarded the $250.00 hourly rate to Tandy Hunt on June 12, 2001, almost five years ago, in Nieto v. Kapoor, Memorandum Opinion and Order at 12.  Additionally, the Honorable Richard L. Puglisi, United States Magistrate Judge, awarded Richard Feferman $250.00 in an Unfair Practices Act and Truth in Lending Act case over a year ago.  See Hernandez v. Enchantment Auto Sales, Inc., No. 02cv1399, Memorandum Opinion and Order at 4 (D.N.M., April 20, 2004)(Puglisi, M.J.).  This Court also awarded K. Lee Peifer $250.00 per hour in Sanchez v. Matta, No. 03cv0297, Memorandum Opinion and Order at 3, 31 (D.N.M. July 29, 2005)(Browning, J.).

Judge Vazquez' opinion in Nieto v. Kapoor is instructive for its analysis in rejecting the contention that courts should use government attorney rates:

> Defendants generally argue that plaintiffs' counsel should be awarded fees that correspond with the State of New Mexico's billing guidelines for contract attorneys. The guidelines state that Risk Management defense attorneys should be paid a maximum of $115 per hour.  The Court agrees with plaintiffs' counsel that these guidelines are not an appropriate yardstick by which to measure the appropriate rates to be awarded counsel in this case.  The Supreme Court has consistently stated that market rates of private counsel are the appropriate rates to be considered in awarding

attorneys' fees.  In <u>Malloy v. Monahan</u>, 73 F.3d 1012 (10th Cir. 1996), the court articulated the reason why plaintiffs should not be awarded the same rate as government contract attorneys: "Plaintiffs' and defendants' civil rights work, however, are markedly dissimilar.  Attorneys in defendants' civil rights cases are typically paid regardless of their success in a case and receive payment on a shorter billing cycle.  Moreover, defendants' attorneys are sometimes guaranteed a certain amount of work from insurance pools."  In contrast, as Mr. Davis states in his affidavit, plaintiffs' counsel run the risk of not receiving any payment at all if they are not successful.  This Court follows the Supreme Court and Tenth Circuit precedent in determining that market rates are more appropriate in setting plaintiffs' counsel's rates.  Additionally, the market rate should be assessed "at the time the fee is being established . . . rather than those in effect at the time the services were performed."

<u>Nieto v. Kapoor</u>, Memorandum Opinion and Order at 10-11.

The City cites to cases in which, over three years ago, the Honorable James A. Parker, then-Chief United States District Judge, awarded Maureen Sanders $225.00 per hour in a Title VII case and in which the Honorable Bruce Black, United States District Judge, awarded Phil Davis $225.00 per hour in a Title VII case.  <u>See</u> <u>Cochran v. Banyan, Inc.</u>, No. 01cv358, Memorandum Opinion and Order at 7 (D.N.M. March 7, 2002)(Parker, C.J.); <u>Murtagh v. Bd. of County Comm'rs of Bernalillo County</u>, No. 00cv1679, Memorandum Opinion and Order at 5, 19 (D.N.M. July 12, 2002)(Black, J.).

Over two years ago, in <u>Hitson v. First Savings Bank</u>, the Honorable Leslie C. Smith, United States Magistrate Judge, awarded Albuquerque attorney Thomas L. Johnson $200.00 per hour in a Title VII case and attorney Kathryn D. Lucero $180.00 per hour for work as a second-chair counsel in that case.  <u>See</u> <u>Hitson v. First Savings Bank</u>, No. 01cv0966, Memorandum Opinion and Order at 5-6 (D.N.M. January 10, 2003)(Smith, M.J.).  Attorneys Hannah B. Best and Patrick L. Fogel have received $180.00 per hour.  <u>See</u> <u>Torrez v. Julian</u>, No. 01cv720, Memorandum Opinion and Order at 2, 8 (D.N.M., March 11, 2003)(Black, J.)(ruling that counsel who obtained a verdict in the plaintiff's

favor on retaliation claim in the amount of $85,500.00, including punitive damages, were entitled to $180.00 per hour).  See also Derringer v. Chapel, No. 02cv974, Memorandum Opinion and Order at 5 (D.N.M., January 2, 2003)(Johnson, J.)(finding that $150.00 an hour was a reasonable rate for attorney with 19 years experience in commercial litigation in this geographic area).

## V.    EXPENSES.

In advancing the above purposes, the Tenth Circuit in Case v. Unified School Dist. No. 233, held that reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney fees award if the expenses are usually billed to a client.

> Reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate.  The attorneys requesting fees bear the burden of establishing the amount of compensable expenses to which they are entitled.  In this case, the parties do not dispute that fax and Westlaw charges are expenses normally itemized and billed in addition to the hourly rate.  Therefore, expenses for those services should be awarded to the extent they are reasonable.

Case v. Unified School Dist. No. 233, 157 F.3d at 1257-1258 (citations omitted).

According to Brown v. Gray, 227 F.3d 1278, 1297 (10th Cir. 2000), out-of-pocket expenses are compensable if they are charged to the client:

> We set forth the guidelines for awarding out-of-pocket expenses pursuant to section 1988 in Ramos v. Lamm, 713 F.2d 546 (10th Cir. 1983).  We held there that "[i]tems that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount."  In other words, reasonable out-of-pocket expenses not normally absorbed as part of law firm overhead should be reimbursed as attorney's fees under section 1988.  In deciding whether to award such expenses, the district court must determine whether "such expenses are usually charged separately in the area."  This necessarily involves a factual inquiry into the billing practices of law firms in the region who provide services to fee-paying clients.

Id. at 1297.

Although the City points to <u>Harris v. Marhoefer</u>, 24 F.3d 16 (9th Cir. 1994), for the proposition that expenses for the use of a private investigator may not be awarded to a prevailing plaintiff, <u>Harris</u> actually allowed the prevailing plaintiff to recover them as a reasonable expense that would normally be billed to a client.  <u>See id.</u> at 19-20.  Other courts have also granted the expenses of an investigator to a prevailing plaintiff under section 1988 and Title VII.  <u>See</u> <u>Navarro v. General Nutrition Corp.</u>, 2004 U.S. Dist. LEXIS 24258, at *47 (N.D. Ca. November 19, 2004)(Chen, M.J.)(citing with approval <u>Harris v. Marhoefer</u>, 24 F.3d at 19, for the proposition that a plaintiff in a civil rights action may be reimbursed for the cost of an investigator); <u>Jackson v. Austin</u>, 267 F. Supp. 2d 1059, 1066 (D. Kan. 2003)(Vratil, J.)(awarding $40 per hour in expense paid to an investigator)(citation omitted); <u>Lambert v. Fulton County</u>, 151 F. Supp. 2d 1364, 1378 (N.D. Ga. 2000)(Thrash, J.)(rejecting the notion that costs, such as the use of an investigator, are not recoverable under section 1988 and holding that "'with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988'" (citation omitted)); <u>Frenz v. Quereshi</u>, 1999 U.S. Dist. LEXIS 4329, at *17 (D. Or. March 11, 1999)(Stewart, M.J.)(awarding $500 in expense paid to an investigator); <u>Lawyer v. 84 Lumber Co.</u>, 1998 U.S. Dist. LEXIS 2992, at *17 (N.D. Ill. 1998)(Hart, J.)("Costs of an investigator may be properly awarded as an attorney fee.").

## ANALYSIS

Kelley is undoubtedly a prevailing party.  None of the special circumstances that preclude an award of fees to the prevailing plaintiff apply.  The issue is whether the Court should reduce Kelley's application for attorney fees.

-17-

I.      **NUMBER OF HOURS**.

Because Kelley prevailed on only one claim of relief, the Court must address two questions. First, did Kelley fail to prevail on claims that were unrelated to the claims on which she succeeded? Hensley v. Eckerhart, 461 U.S. at 434.  Second, did she achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?  See id.

Kelley's counsel block bills in their time records, which the Tenth Circuit has defined as "'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'"  Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998)(quoting Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)).  See generally Sanders Time Records; Sears Time Records.  There is no explanation of how each amount of billable time is allotted to specific tasks within each entry, nor have the attorneys submitted separate entries for each task.  While many insurance companies prohibit block billing, the Tenth Circuit has held that Title VII does not forbid block billing per se.  See Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000)("As the district court properly recognized, however, this court has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block billing." (citing Robinson v. City of Edmond, 160 F.3d at 1281)); Murtagh v. Bd. of County Comm'rs of Bernalillo County, Memorandum Opinion and Order at 6 ("Block billing, or lumping tasks into a single entry of time, while not favored is not per se forbidden." (citation omitted)).  Although the Tenth Circuit "admonishes" attorneys not to engage in block billing, the Court may still grant block billed fees to a party when the records "sufficiently allow[] the court to determine the time allotted by [the party's] attorneys to specific tasks and the reasonableness of that time."  Cadena v. Pacesetter

-18-

Corp., 224 F.3d at 1215 (citing Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1112 (10th Cir. 1998)). See also Murtagh v. Bd. of County Comm'rs of Bernalillo County, Memorandum Opinion and Order at 6 (describing block billing as "not favored").

The City, without any affidavit or other admissible evidence, challenges the amount of hours that Kelley's attorneys spent in prosecuting this action. See Response at 5-9. To make that challenge, the City should have revealed all the original time records its attorneys spent on each issue, so the Court could consider whether the amount of hours Kelly asserts is unreasonable. See Blowers v. Lawyers Coop. Publ'g Co., 526 F. Supp. 1324, 1325-27 (W.D.N.Y. 1981)(Elfvin, J.)("The amount of time spent by defendants' attorneys on a particular matter may have significant bearing on the question whether plaintiff's attorney expended a reasonable time on the same matter."); Naismith v. Prof'l Golfers Ass'n, 85 F.R.D. 552, 562-64 (N.D. Ga. 1979)(Moye, J.)(finding persuasive the argument that the defendants' billing records were relevant because "[e]ach party must prepare to question the same witnesses, must review the same documents and other evidence, and must anticipate a presentation by the opposition of a complexity related to the facts in issue. Similarly, work on pretrial motions would reflect what volume of work opposing attorneys deemed reasonable" (citation and internal quotations omitted)); McPherson v. Sch. Dist. # 186, 465 F. Supp. 749, 758-59 (S.D. Ill. 1978)(Ackerman, J.)(examining the number of hours billed by defendants' counsel as relevant to determining the reasonableness of claimed hours). Here, the City criticizes Kelley's attorneys without providing any comparison; hence, the Court must make its own review. From a review of the time records that Kelley submitted, the award is based upon time reasonably spent.

The requested amount represents professional services rendered in securing the judgment and for preparing this application. Kelley's attorneys represent that they have deleted time spent on the

class-of-one claim, including the time spent on the amended complaint and time spent on briefing the matter at summary judgment, because Kelley was not successful on that claim.  See Reply at 4. Correspondingly, they assert that time spent in researching and briefing unsuccessful claims are not included in their fee request.  See id.; Sanders Time Records at 16.

The issue is whether Kelley's attorneys have set forth a request for a reasonable fee.  After carefully reviewing the time records, the Court concludes that the attorney fee request is reasonable.

## A.   REASONABLENESS OF TIME SPENT BY THE ATTORNEYS.

### 1.   Sanders.

The City objects to awarding any time that Sanders spent on issues concerning the class-of-one equal protection claim because Kelley was unsuccessful on that claim.  See Response at 6-8.  In response, Kelley's attorneys assert that they have already removed from their total fee request 16.5 hours, the amount of time that they spent working on the unsuccessful equal protection claim.  See Reply at 4.  Unsatisfied with this concession, the City contends that 20.9 hours should be subtracted from the total fee request.  See Response at 8.

As an initial matter, the Court notes that the City is incorrect that the Court must deny a plaintiff, who prevails on some but not all of her claims, fees incurred on the unsuccessful claims. There is no doubt that "a district court may reduce a lodestar calculation on the grounds that a prevailing party has achieved only partial success."  Robinson v. City of Edmond, 160 F.3d at 1283 (citations omitted).  Where two or more claims in a suit, however, arise from "'a common core of facts or . . . related legal theories,'" the Court must focus on the "'significance of the overall relief.'" Id. (quoting Hensley v. Eckerhart, 461 U.S. at 435).  "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the

-20-

district court did not adopt each contention raised." Hensley v. Eckerhart, 461 U.S. at 440.  Put another way, "when a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award.  When a plaintiff achieves most or all of what she aimed for in a civil rights lawsuit, her lawyer should receive 'a fully compensatory fee.'" Robinson v. City of Edmond, 160 F.3d at 1283 (quoting Hensley v. Eckerhart, 461 U.S. at 435).  The policy reason behind this rule is that "[l]itigants should be given the breathing room to raise alternative legal grounds without fear that merely raising an alternative theory will threaten the attorney's subsequent compensation." Id.

In light of this precedent, the Court would normally have to determine whether the equal protection claim was unrelated or "distinct in all respects" from the successful Title VII claim to answer whether Kelley's attorneys are entitled to fees for work on the equal protection claim. Hensley v. Eckerhart, 461 U.S. at 440.  Kelley's attorneys, however, have already exercised billing judgment to exclude 16.5 hours from their total fee request, which they represent are the hours spent on the equal protection claim. See Reply at 4.  The Court need not, then, decide whether the equal protection claim is related to the Title VII claim.

The issue before the Court is whether more than 16.5 hours should be excised from Sanders' total fee request.  The City objects to certain entries in Sanders' Time Records because they included time spent on amending the complaint and responding to the City's motion for summary judgment. Each of these tasks necessarily included some work on the equal protection claim because the principal purpose of the First Amended Complaint was to add the equal protection claim and one of the issues briefed in the City's motion for summary judgment was the class-of-one theory.  The following are the entries at issue:

-21-

* 5/21/03:     .25 hours spent discussing "amending complaint";
* 6/24/03:     2.25 hours preparing amended complaint;
* 7/11/03:     1.25 hours preparing and serving motion and memorandum to amend complaint;
* 9/2/03:      .5 hours spent circulating order to amend complaint;
* 2/17/04:     6.5 hours for outlining responses to Motion for Summary Judgment;
* 2/18/04:     7.5 hours working on response to factual allegations in Motion;
* 2/19/04:     8.75 hours on continuing research on Defendant's Motion;
* 2/20/04:     8.5 hours continuing work on draft response to Motion, primary focus on qualified immunity and class of one claims;
* 2/21/04:     8.5 hours continue research on Defendant's Motion;
* 2/22/04:     2.75 hours researching;
* 2/23/04:     8.00 hours continue research and drafting Plaintiff's Response to Motion;
* 2/24/04:     5.5 hours continue research and drafting of Response;
* 2/25/04:     2.5 hours review affidavit and continue work on response;
* 2/26/04:     9.75 hours finalizing response to Defendant's Motion.

See Response at 6-7.  The total number of hours spent on these tasks is 72.5 hours.  Out of this total, the City believes that 62.75 hours are impacted by Kelley's work on responding to the City's motion for summary judgment.  See id. at 7.  The City asks the Court to reduce the 62.75 hours by one-third because only one of the three claims, the Title VII claim, survived summary judgment.  See id.

The Court does not think such an arbitrary cut is appropriate.  See Robinson v. City of Edmond, 160 F.3d at 1281 (warning against cutting an attorney fee award "'by an arbitrary percentage'" (quoting People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1314 (7th Cir. 1996)).  Although the City's proposal has a certain mathematical elegance in the abstract, the City points to no specific facts to justify an across the board one-third cut.  The City's request assumes, without any basis, that Sanders expended exactly as much time on the equal protection claim as that unsuccessful claim was proportional to the number of claims raised as a whole.  Without more, the Court refuses to engage in such arbitrary fee cutting.[2]

_____

[2] The Court attempted to come up with its own formula for how many hours Kelley's attorneys spent on the unsuccessful claim.  The Court added up all of the hours spent on the First

-22-

In addition, the City contends that the number of hours in preparing a single response, i.e., in excess of 62 hours, "would appear to be well in excess of the norm," particularly given that Kelley did not brief one claim, conspiracy, at all.  Response at 8.  The City gives this as an additional reason to reduce the time submitted by one-third, or 20.9 hours.  The Court does not find the number of hours claimed by Kelley's counsel unreasonable because the legal issues in this case were important and required considerable research.  The Court spent a lot of time researching these issues, too, resulting in a sixty-seven page opinion, and cannot say that the considerable amount of time Kelley's attorneys spent researching and writing a response was unreasonable.  Without more than the City's suggestion that Kelley should have spent less time on its response, the Court will decline to cut Kelley's hours any further in such an arbitrary manner.

Certain entries of Sanders time include time spent directing staff.  The City argues that the inclusion of such time can, under certain circumstances, be unreasonable.  See Response at 8.  The following are the specific entries to which the City objects:

* 1/7/04:      .5 hours request Don (presumably referring to Sears) and Karen prepare
               Amended Notice of Deposition;
* 4/28/04:     .25 hours requesting Don vacate settlement conference.

The Court does not find unreasonable the fifteen minutes that Sanders spent on April 28,

---

Amended Complaint, which was devoted to putting forth the unsuccessful claim.  The Court then studied Kelley's Response to the motion for summary judgment, and tried to determine how much of her Response was devoted to the unsuccessful equal protection claim.  The Court then further cut each of the entries for the Response to the City's motion for summary judgment by sixteen percent, which is approximately the amount of the Response that focused on the unsuccessful claim.  This calculation yielded 15.17 hours spent on the unsuccessful claim.

The Court then tried to cut each entry for the Response by twenty percent, which is the closest round number to sixteen percent.  This computation resulted in a cut of 17.9 hours.  Because both appraisals led to a figure very close to Kelley's figure of 16.5 hours, the Court found Kelley's proposed cut to be reasonable and adopted it as the proper figure.

2004, requesting that Sears vacate a settlement conference. The Court believes that the thirty minutes spent on January 7, 2004 requesting that Sears and "Karen" prepare an Amended Notice of Deposition is unreasonable and reduces that amount to .3 hours. The Court concludes that this is a more reasonable period of time spent on this task, and so will deduct .2 hours from Sanders' total number of hours. This alteration means that Sanders' total number of hours is 426.55 hours.

2. **Sears.**

The City complains that some of the time that Sears spent was duplicative of time that Sanders billed, and argues that the Court should exclude those redundant entries. See Response at 8. The City also objects to certain conferences between Kelley's counsel. See id. The following are the entries at issue regarding Sears:

* 12/21/04:   2.5 hours meeting with Sanders. Sanders also billed 10.5 hours on apparent trial preparation on this date.
* 1/1/05:   1.75 hours meet "w/Sanders" regarding trial strategy. Sanders also billed 7.75 hours in apparent trial preparation on this date.
* 1/3/05:   9.5 hours attending trial. Sanders likewise billed 12.5 hours attending trial.
* 1/4/05:   9.25 hours attending trial, plus an additional 9.5 hours. The City alleges that Sears has counted twice because it is unlikely he spent 18.75 hours attending trial. Sanders billed 12.5 hours attending trial on this date.
* 1/5/05:    9.5 hours for attending trial. Sanders billed 9.5 hours also attending trial.

The Court has assessed the possibility that the hours include duplication, by reviewing with particular care the number of lawyers present at hearings, depositions, and other discovery proceedings, and by evaluating the roles the lawyers played in the litigation generally. The City contends that it needed only one lawyer at trial and that Kelley's case was not so complicated that it required the presence of two attorneys. See Response at 9. The City points to Ramos v. Lamm, 713 F.2d at 554, for the proposition that the Court "can look to how many lawyers the other side

utilized as indication of the effort required." <u>See</u> Response at 9.  At all times, however, there were two attorneys – Kevin Brown and Bob White -- at the City's counsel table.  Additionally, Daniel J. Macke signed pleadings and participated in pre-trial matters.  Given the number of attorneys sitting with the City during trial, the Court cannot say that it was unreasonable for Kelley to also have two attorneys present at trial.

Counsel discussing the trial and its strategy, and dividing up witnesses, is not per se duplicative.  None of the conferences listed are excessive.  The Court will not reduce Sears' time for these discussions.

There is, however, a typographical error in the time for January 4, 2005, in which an additional 9.5 hours worth of work was added to the 9.25 hours that Sears actually worked that day. <u>See</u> Sears Time Records at 2; Reply at 5.  Thus, the Court will subtract 9.5 hours from Sears' attorney fee claim, making his total time 61.25 hours.  No additional deduction is necessary, because Kelley's counsel has already exercised billing judgment to excise time spent on the unsuccessful equal protection claim.

## B.     ATTORNEY FEE HOURLY RATE.

Kelley has presented affidavits and pointed to other cases in the District to carry her burden that the hourly rates charged by her attorneys are reasonable.  The evidence that the City puts forth to contradict Kelley is not enough to show that the rates are unreasonable.

### 1.     Rate for Sanders.

Kelley has pointed to other civil rights cases in this District to show that $250.00 per hour is a reasonable rate.  <u>See</u> Reply at 1-2.  In <u>Lewis v. N.M. Dep't of Health</u>, Chief Judge Vazquez awarded Maureen Sanders and Phil Davis $250.00 per hour each as a reasonable attorney fee under

42 U.S.C. § 1988.  See Lewis v. N.M. Dep't of Health, Memorandum Opinion and Order at 13-14, 19.  Then-Judge Vazquez awarded $250.00 per hour to Tandy Hunt in another civil rights case.  See Nieto v. Kapoor, Memorandum Opinion and Order at 12.  Furthermore, in an Unfair Practices Act and Truth in Lending Act case in 2004, Magistrate Judge Richard L. Puglisi awarded Richard Feferman $250.00 per hour because of his 30 years' experience and his expertise in consumer fraud cases.  See Hernandez v. Enchantment Auto Sales, Inc., Memorandum Opinion and Order at 4.  Finally, this Court awarded K. Lee Peifer $250.00 per hour in a civil rights case earlier this year.  See Sanchez v. Matta, Memorandum Opinion and Order at 3, 31.

To further bolster the fee application, Sanders attaches an affidavit listing his qualifications and expertise in this area of law.  See Unsworn Declaration of Steven K. Sanders, Under Penalty of Perjury in Support of Application for Attorney Fees.  He has been practicing law since October 1974 and has been lead counsel in more than 100 jury trials.  See id. ¶¶ 7-8, at 6-7.  He represented municipal or county governments in a full-time capacity between 1975 and 1987.  See id. ¶¶ 9-10, at 7.  He primarily handles federal litigation and plaintiffs' civil rights cases.  See id. ¶ 15, at 8.

With these cases and Sanders' impressive qualifications, Kelley has shouldered her burden of demonstrating that $250.00 per hour is reasonable.  To rebut this evidence, the City points to two cases in which attorneys received $225.00 per hour.  See Cochran v. Banyan, Inc., Memorandum Opinion and Order at 7; Murtagh v. Bd. of County Comm'rs of Bernalillo County, Memorandum Opinion and Order at 5, 19.  The City further states that the Court should reduce the $250.00 rate requested for Mr. Sanders because it is not aware of any defense attorney receiving $250.00 per hour for legal work on behalf of the government or public entities.  See Response at 3.  The City submits that $250.00 is nearly twice the amount charged by defense counsel in such cases.  See id.  The City

represents that neither Mr. Sanders, nor the City's counsel herein, are aware of any attorney in private practice who ordinarily bills at this rate.  See id.

The Court finds the City's argument unpersuasive.  Given that in the marketplace different lawyers will naturally charge slightly different rates, the fact that some attorneys have received $25.00 per hour less than what Sanders is requesting is not convincing.  Indeed, that attorneys have received $225.00 per hour, which is within the range of Sanders' requested $250.00 per hour, strengthens the Court's conclusion that $250.00 per hour today is not so much higher than the normal rate in this area as to be unreasonable.  Furthermore, the Court should award fees while keeping in mind Congress' intent to pay the attorneys of prevailing parties in civil rights cases "on a par with commercial lawyers."  Robinson v. Ala. State Dep't of Educ., 727 F. Supp. at 1427 n. 14.  The operative issue is the prevailing attorney fee rate for commercial litigation, such as antitrust work, and not the prevailing rate for defense work for the government.  See id.  The Court's own personal experience before being appointed to the bench in 2003 is that several members of the complex commercial litigation bar had billed at rates of $250.00 and $275.00.[3]  Combining the normal compensation rate for commercial attorneys in this area with the other cases in this District where civil rights attorneys have received $250.00, the Court finds that Sanders' rate is reasonable.

2.    **Rate for Sears.**

To support the request for $200.00 per hour for Sears, Kelley's counsel point to Hitson v. First Savings Bank, where attorney Kathryn D. Lucero received $180.00 per hour for work as a

---

[3] The Judge's practice before he went on the bench was primarily complex commercial litigation, although he also did civil rights work, too.  He also testified as a witness, both as a lay and expert witness, on fees.  The Judge's memory is that his rate was $215.00 per hour, but his partner's was $250.00 per hour.

second-chair counsel in that case.  See Hitson v. First Savings Bank, Memorandum Opinion and Order at 5-6.  Sears' request for $200.00 per hour, two years after Ms. Lucero's request of $180.00 in Hitson v. First Savings Bank, is reasonable.

The City cites to cases in which an attorney with seven years experience received $135.00 per hours and an attorney with nineteen years experience received $180.00 per hour.  See Torrez v. Julian, Memorandum Opinion and Order at  2, 8; Murtagh v. Bd. of County Comm'rs of Bernalillo County, Memorandum Opinion and Order at 19.   The City asserts that Sears should receive $150 per hour as a mid-point between these two figures because Sears has approximately eleven years of experience.  See Response at 4-5.  Given that second-chairs have received close to $200.00 per hour in this District and that Sears has eleven years of experience, the Court, however, finds that this rate is reasonable.

## II.    **EXPENSES.**

Kelley's non-taxable expenses total $306.34.  See Sanders Time Records at 16.  The City contends that non-taxable costs are non-taxable, and should not be included.  See Response at 1.  The Tenth Circuit, however, has stated that "[i]tems that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount."  See Ramos v. Lamm, 713 F.2d at 559.

As Mr. Sanders states in his affidavit, he billed all expenses set before the Court to Kelley, and he bills similar expenses to all clients that his firm represents.  See Unsworn Declaration of Steven K. Sanders, Under Penalty of Perjury in Support of Application for Attorney Fees ¶ 6, at 6.  State law requires the attorney to pay the tax on any fee received, and it is the practice of lawyers to pass that tax on to the client.  The Court will add gross receipts tax on top of the amount awarded.

The City complains about the cost for an investigator. <u>See</u> Response at 9.  While the expense of hiring a private investigator to interview witnesses may not be taxable under 54(b), it is awardable under Title VII.  <u>See</u> <u>Harris v. Marhoefer</u>, 24 F.3d at 19-20;  <u>Navarro v. General Nutrition Corp.</u>, 2004 U.S. Dist. LEXIS 24258, at *47;<u>Jackson v. Austin</u>, 267 F. Supp. 2d at 1066; <u>Lambert v. Fulton County</u>, 151 F. Supp. 2d at 1378;  <u>Frenz v. Quereshi</u>, 1999 U.S. Dist. LEXIS 4329, at *17; <u>Lawyer v. 84 Lumber Co.</u>, 1998 U.S. Dist. LEXIS 2992, at *17.  Furthermore, Sanders represents that this expense is one that he normally charges clients.  <u>See</u> Unsworn Declaration of Steven K. Sanders, Under Penalty of Perjury in Support of Application for Attorney Fees ¶ 6, at 6.  While an investigator may not be necessary, it may be cheaper than having the lawyers interview each witness.  The City apparently needed an investigator, too.  As such, the City should pay these fees.  The Court will tax the expense of hiring a private investigator, $198.11, against the City.

Finally, the City objects to $71.23 spent on copies.  <u>See</u> Response at 1-2.  The Clerk of the Court has already awarded the cost of copies in the amount of $78.00.  <u>See</u> Clerk's Order Settling Costs at 3, filed February 28, 2005 (Doc. 109).  At the hearing on this application, Kelley's attorney confirmed that the two requests for copies were the same and that he had already received reimbursement for all copies.  <u>See</u> Transcript of Hearing at 3:15-4:8 (taken October 21, 2005).[4] Given that Kelley's counsel has already received an amount for copies in excess of the amount they are requesting here, the Court declines to award the cost of copies under this motion.  The Court deducts $71.23 from the amount that Kelley's counsel request as expenses, leading to a total expense amount of $235.11.

---

[4] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

In sum, the Court will award the following fees:

Steven K. Sanders:

| | | |
|---|---|---|
| Total Attorney Fees: | 426.55 hrs (443.25 hrs - 16.5 hrs - .2hrs) x $250.00 = | $106,637.50 |
| N.M. G.R. Tax: | 6.75% x $106,637.50 = | $7,198.03 |
| Other Costs: | | |
|     Postage: | | $37.00 |
|     Private Investigator: | | $198.11 |
| Grand Total: | | $114,070.64 |

Donald R. Sears, Jr.

| | | |
|---|---|---|
| Total Attorney Fees: | 61.25 hrs (70.75 hrs - 9.5 hrs ) x $200.00 = | $12,250.00 |
| N.M. G.R. Tax: | 6.75% x $12,250.00 = | $826.88 |
| Grand Total: | | $13,076.88 |

| | | |
|---|---|---|
| Total for Sanders and Sears: $114,070.64 + $13,076.88 = | | $127,147.52 |

**IT IS ORDERED** that the Application for Attorneys Fees is granted in part, and the

Court awards the Plaintiff $126,912.41 in attorney fees, $235.11 in expenses, and $0 in costs for

prosecuting this action.  These amounts yield a total award of $127,147.52.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Steven K. Sanders
Donald L. Sears, Jr.
Steven K. Sanders and Associates, L.L.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Kevin M. Brown
Daniel J. Macke
Brown & German
Albuquerque, New Mexico

*Attorneys for the Defendant*