## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JUDITH K. KELLEY,

        Plaintiff,

vs.                                                                                       No. CIV-03-507 JB/ACT

CITY OF ALBUQUERQUE,
A municipal corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion and Memorandum Requesting Pre- and Post-Judgment Interest, filed January 24, 2005 (Doc. 96). The Court held a hearing on this motion on October 21, 2005. The primary issue is whether the Court should grant Plaintiff Judith K. Kelley pre- and post-judgment interest on her damages award. Because the Court determines that a pre-judgment interest rate of 4% and a post-judgment interest rate of 2.77% are appropriate, the Court will grant in part and deny in part Kelley's motion.

## PROCEDURAL BACKGROUND

Kelley brought this action, contending that the Defendant City of Albuquerque terminated her in violation of the New Mexico Human Rights Act ("NMHRA"), N.M.S.A. 1978 § 28-1-1, Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. §§ 2000e-5(f) to 2000e-17, and her right to equal protection under 42 U.S.C. §§ 1983 and 1985(2) and (3). See Memorandum Opinion and Order at 19-20, filed December 30, 2004 (Doc. 74). In the prayer for relief in her First Amended Complaint, Kelley asked the Court to award "compensatory damages against all Defendants with accrued interest to Plaintiff for pecuniary and non-pecuniary losses, including lost earnings, past

and future, lost employment benefits, lost retirement benefits, lost medical benefits,  medical premiums, emotional pain, suffering, inconvenience and mental anguish all in a sum to be proven at trial." First Amended Complaint at 6-7, filed September 11, 2003 (Doc. 18).

The jury awarded Kelley $172,974.90 for loss of back pay, wages, and benefits from the date of her termination to the date of trial, and $200,000.00 in damages for lost future retirement and pension benefits. See Special Verdict Form at 2, filed January 6, 2005 (Doc. 86). The Court filed the final judgment on January 6, 2005, and it was docketed on January 7, 2005. See Final Judgment at 1, filed January 6, 2005 (Doc. 87).

Kelley filed her motion requesting pre- and post-judgment interest on January 24, 2005. Kelley requests that the Court grant pre-judgment interest on the back pay award of $172,974.90 at the rate of ten per cent per annum from the date of discharge, January 1, 2002, to the date of the final judgment, January 7, 2005. See Motion for Pre- and Post- Judgment Interest at 1. Kelley also requests post-judgment interest on the entire award, including pre-judgment interest as allowed by 28 U.S.C. § 1961(a). See id. Kelley requested concurrence in this motion from the City's attorney, but the City denied the request. See id. at 5.

## RULE 59

Rule 59(e) of the Federal Rules of Civil Procedure provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." A rule 59(e) motion should be granted "only to correct manifest errors of law or to present newly discovered evidence." Loughridge v. Chiles Power Supply Co., 431 F.3d 1268, 1274-75 (10th Cir. 2005)(quoting Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997)). The United States Court of Appeals for the Tenth Circuit has also approved of using a rule 59(e) motion to contest

inconsistencies in a jury's verdict and to request pre-judgment interest, because "prejudgment interest is considered part of the plaintiff's compensation and is thus part of the merits of the trial court's judgment." Id. at 1275; Macsenti v. Becker, 237 F.3d 1223, 1245 (10th Cir. 2001)(citing Capstick v. Allstate Ins. Co., 998 F.2d 810, 812-13 (10th Cir. 1993)).  The Supreme Court of the United States has also held that "a post-judgment motion for discretionary prejudgment interest is a Rule 59(e) motion." Osterneck v. Ernst & Whinney, 489 U.S. 169, 177 (1989).

Under rule 58(b)(1), "[j]udgment is entered for purposes of these rules . . . when it is entered in the civil docket under Rule 79(a)."  Rule 79(a) provides:

> All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number. These entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process. The entry of an order or judgment shall show the date the entry is made.

Rule 6(a) explains how to compute the ten-day time period of Rule 59(e) motions:

> In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the district court inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As used in this rule and in Rule 77(c), "legal holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President of the Congress of the United States, or by the state in which the district court is held.

## LAW REGARDING PRE- AND POST-JUDGMENT INTEREST

28 U.S.C. § 1961(a) provides:

Interest shall be allowed on any money judgment in a civil case recovered in a district court.  Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State.  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[.] [sic] the date of the judgment.  The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

Section 1961 applies only to post-judgment interest, not pre-judgment interest.  See Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1287 (10th Cir. 2002); Frymire v. Ampex Corp., 61 F.3d 757, 773 (10th Cir. 1995)("Apparently the Supreme Court has tacitly agreed that § 1961(a) does not control the award of prejudgment interest.  In Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827 (1990), four Justices noted that § 1961 was a postjudgment and not a prejudgment statute and suggested that the remaining Justices on the Court agreed.").  Post-judgment interest compensates plaintiffs "for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant."  Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. at 835-36 (citations and internal quotations omitted).  Awarding post-judgment interest is mandatory.  See Bancamerica Commer. Corp. v. Mosher Steel, 103 F.3d 80, 81 (10th Cir. 1996).

The Tenth Circuit has concluded that attorney's fees and costs form part of the judgment upon which district courts should grant post-judgment interest.  See Wheeler v. John Deere Co., 986 F.2d 413, 415 (10th Cir. 1993); Transpower Constructors, Div. of Harrison Int'l Corp. v. Grand River Dam Authority, 905 F.2d 1413, 1423-24 (10th Cir. 1990).  In the case of attorney's fees and

costs, post-judgment interest begins to accrue when the fees and costs "are quantified and reduced to a judgment," not from the date in which the district court enters a merits judgment. Midamerica Federal Sav. & Loan Ass'n v. Shearson/American Express, Inc., 962 F.2d 1470, 1476 (10th Cir. 1992). See also Wheeler v. John Deere Co., 986 F.2d at 415-16. "Moreover, the monetary award upon which postjudgment interest should accrue is the entire award granted by the district court, including the forthcoming award of prejudgment interest." Bancamerica Commer. Corp. v. Mosher Steel, 103 F.3d at 82.

For Title VII purposes, pre-judgment interest is "an element of complete compensation" that "helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred." Reed v. Mineta, 438 F.3d 1063, 2006 U.S. App. LEXIS 4383 at *7 (10th Cir. 2006)(citations and internal quotations omitted). It compensates the plaintiff "for being deprived of the monetary value of his loss from the time of the loss to the payment of judgment." Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc., 295 F.3d 1065, 1078 (10th Cir. 2002)(citations omitted).

Calculating pre-judgment interest "rests firmly within the sound discretion of the trial court." Caldwell v. Life Ins. Co. of N. Am., 287 F.3d at 1287 (citations omitted). The Tenth Circuit has outlined the two-step approach for determining whether to award pre-judgment interest: "The district court must first determine whether the award of prejudgment interest will serve to compensate the injured party. Second, even if the award of prejudgment interest is compensatory in nature, the district court must still determine whether the equities would preclude the award of prejudgment interest." Id. at 1286 (citations and internal quotations omitted). "[A] federal rate of interest rather than the state rate applies where jurisdiction is based on a federal question." Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc., 295 F.3d 1065, 1077 (10th Cir. 2002)(citations omitted).

<u>ANALYSIS</u>

**I.      <u>PRE-JUDGMENT INTEREST</u>.**

The award of pre-judgment interest rests firmly within the sound discretion of the trial court. <u>See</u> <u>Caldwell v. Life Ins. Co. of N. Am.</u>, 287 F.3d at 1287.  The Court must undertake a two-part analysis to determine whether it should award pre-judgment interest.  <u>See</u> <u>id.</u> at 1286.  The Court must first determine whether the award of pre-judgment interest will serve to compensate the injured party.  <u>See</u> <u>id.</u>  Second, even if the award of pre-judgment interest is compensatory in nature, the Court must still determine whether the equities would preclude the award of pre-judgment interest. <u>See</u> <u>id.</u>

An award of pre-judgment interest is appropriate, under the Tenth Circuit's two-part test, in this case.  Awarding pre-judgment interest will compensate Kelley by preserving the value of her award from the time of her loss until the judgment, a central purpose of pre-judgment interest awards in Title VII awards.  <u>See</u> <u>Reed v. Mineta</u>, 438 F.3d 1063, 2006 U.S. App. LEXIS 4383 at *7.  Also, the equities do not preclude the award of pre-judgment interest because the hardship to the City of paying an increased award is not as great as the public policy of making a Title VII plaintiff whole or redressing the injury which the jury determined that Kelley had suffered.  In fact, if the Court awards an appropriate rate of interest, the Court will only be awarding that which Kelley requires to be made whole.

Kelley suggests that the Court grant her pre-judgment interest at a rate of 10% per annum. <u>See</u> Motion for Pre- and Post- Judgment Interest at 5.  To support her request, Kelley cites cases from the District of Colorado and the District of Kansas that awarded prevailing plaintiffs 10% per annum in Title VII cases.  <u>See</u> <u>Hillman v. United States Postal Serv.</u>, 2002 U.S. Dist. LEXIS 6616,

at *14-15 (D. Kan. April 16, 2002)(Crow, J.); <u>Carr v. Fort Morgan Sch. Dist.</u>, 4 F. Supp. 2d 989, 997 (D. Colo. 1998)(Johnson, J.).  In its discretion, however, the Court declines to apply Kelley's proposed interest rate.  Both opinions picked 10% because it is the statutory rate of interest in Kansas.  <u>See</u> <u>Hillman v. United States Postal Serv.</u>, 2002 U.S. Dist. LEXIS 6616, at *14-15; <u>Carr v. Fort Morgan Sch. Dist.</u>, 4 F. Supp. 2d at 997 (citing <u>Barvick v. Cisneros</u>, 953 F. Supp. 341 (D.Kan. 1997), which imposed a 10% interest rate based on the Kansas statutory interest rate).  This case does not implicate the Kansas statutory interest rate because neither the parties nor the claims in this case, to the best of the Court's knowledge, emanates from Kansas.  As a result, the Kansas statutory rate of interest is inapplicable to this case.

The Court's independent evaluation of Kelley's proposed 10% rate also leads it to the conclusion that a lower rate would be more appropriate.  The purpose of awarding pre-judgment interest is to compensate Kelley for being deprived of the monetary value of her loss from the time of the loss to the payment of judgment.  <u>See</u> <u>Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.</u>, 295 F.3d at 1078.  Looking at the rate of inflation during 2002, 2003, and 2004, as measured by the Consumer Price Index, prices increased by 1.6%, 2.3%, and 2.7%, respectively, yielding an average rate of 2%.  <u>See</u> Bureau of Labor Statistics, 2002 Consumer Price Index for All Urban Consumers, at <u>http://www.bls.gov/cpi/cpid02av.pdf</u> (last accessed on April 9, 2006); Bureau of Labor Statistics, 2003 Consumer Price Index for All Urban Consumers, at <u>http://www.bls.gov/cpi/cpid03av.pdf</u> (last accessed on April 9, 2006); Bureau of Labor Statistics, 2004 Consumer Price Index for All Urban Consumers, at <u>http://www.bls.gov/cpi/cpid04av.pdf</u> (last accessed on April 9, 2006).  In terms of investment opportunities, the Dow Jones Industrial Average rose from 10,021.50 at the start of 2002 to 10,783.01 at the end of 2004, a 7.6% increase.  <u>See</u> Dow Jones Indexes, Dow Jones Averages, at

http://www.djindexes.com/mdsidx/index.cfm?event=showavgIndexData (last accessed on April 9, 2006).  During the same period, the highest weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, was 2.77%, reported for the week ending December 31, 2004.  See Board of Governors of the Federal Reserve System, Federal  Reserve  Statistical  Release  for  January  3,  2005,  at http://www.federalreserve.gov/releases/h15/20050103/ (last accessed on April 5, 2006).

None of these three economic indicators approaches 10%.  Rather than ensuring that Kelley is made whole by compensating her for the true cost of her damages, 10% would produce a windfall in excess of the amount of money that Kelley probably could have generated during the pre-judgment period.  Kelley's proposed interest rate is untethered to the economic currents of the pre-judgment period that would have acted upon her damages.

In the alternative, the City suggests that the Court look at the weekly average one-year constant maturity Treasury yield to determine the appropriate rate of pre-judgment interest and indicated that 2.77% would be acceptable.  See Transcript of Hearing at 12:17-13:5 (taken October 21, 2005).[1]  While such an approach would rest on a firmer economic foundation than Kelley's proposal because the City's proposed rate reflects the ebb and flow of interest rates during the pre-judgment period, the Court does not believe that it should look to this indicator alone.  Such an analysis would ignore the value that Kelley could have generated from her damages during the pre-judgment period, such as through the stock market.

To arrive at a figure that reflects all of these factors – the rate of inflation, interest rates, and

--------

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

investment opportunities – the Court averaged: (i) the Consumer Price Index figures for 2002, 2003, and 2004; (ii) the percentage increase of the Dow Jones Industrial Average between the beginning of 2002 and the end of 2004; and (iii) the highest weekly average one-year constant maturity Treasury yield during the pre-judgment period. This calculation yields 3.4%. The Court will round up from this figure – to ensure that, as a prevailing Title VII plaintiff, Kelley is fully compensated for her damages – to 4% and award Kelley pre-judgment interest at a rate of 4%.

The rate of 4% passes the Tenth Circuit's two-part test. Because it is two percentage points higher than the average rate of increase in the Consumer Price Index during the pre-judgment period, it will ensure that the Court has fully addressed inflation. The rate of 4% also guarantees that Kelley is reimbursed for the value that she could have generated from her damages during the pre-judgment period, without assuming that she would have picked the riskiest investments. At the same time, this rate will not produce a windfall, because it is tied directly to the financial currents of the pre-judgment period, unlike Kelley's suggested ten percent rate, which Kelley put forth with no explanation as to how it related to the actual economic conditions of that period. <u>See</u> Motion for Pre- and Post-Judgment Interest at 2.

In addition, the equities do not preclude this rate. While the rate of 4% requires the City to part with more money than the bare amount listed on the judgment, the Court is not requiring the City to pay any more than reasonably necessary to ensure that Kelley receives her full amount of compensation. The hardship to the City is not as great as the public policy of making a Title VII plaintiff whole or of redressing the injury that the jury determined that Kelley suffered.

In its brief, the City objects to awarding pre-judgment interest at all because Kelley's motion was untimely. <u>See</u> Response at 1. Specifically, the City contends that Kelley's motion for interest

is a rule 59(e) motion to alter or amend the judgment and that Kelley failed to bring her motion within ten days of the entry of judgment. See id.

The Court filed the judgment in this case on January 6, 2005, but it was not entered on the docket until January 7, 2005. According to rule 58(b)(1), judgment is entered when it is entered in the civil docket. The Court's electronic docket indicates that the judgment was entered in the docket on January 7, 2005. Ten days from January 7 – excluding, per rule 6(a), the weekend days of January 8, 9, 15, 16, 22, and 23, and the Birthday of Martin Luther King, Jr. on January 17 – yields January 24 as the tenth day from the entry of judgment, the day that Kelley filed her motion. Kelley's motion, therefore, was filed within ten days of the entry of judgment and is timely.[2]

The City also argues that Kelley failed to demand such interest in her First Amended Complaint or Pre-Trial Order, without explicitly contending that this is a ground for denying her motion. See Response at 1-2. Even so, Kelley's First Amended Complaint requested "compensatory damages against all Defendants *with accrued interest* to Plaintiff for pecuniary and non-pecuniary losses, including lost earnings, past and future, lost employment benefits, lost retirement benefits, lost medical benefits, medical premiums, emotional pain, suffering, inconvenience and mental anguish all in a sum to be proven at trial." First Amended Complaint at 6-7 (emphasis added). If the City means that Kelley waived a demand for interest by not asserting it earlier, the First Amended Complaint demonstrates that the City was on notice that such a demand would be forthcoming.

Finally, the City asserts that various state statutes under which Kelley sued do not allow for the award of interest. See Response at 3-4. The Tenth Circuit, however, has explained that a federal

---

[2] In its March 22, 2006 Order, the Tenth Circuit reached the same conclusion. See Order at 1-2, filed March 29, 2006 (Doc. 121).

rate of interest, rather than the state rate, applies where jurisdiction is based on a federal question. See Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc., 295 F.3d at 1077.  The City removed this case on the basis of federal question jurisdiction.  See Notice of Removal at 1, filed April 30, 2003 (Doc. 1).  The Court will therefore award Kelley pre-judgment interest at a rate of 4%, yielding a total award with pre-judgment interest of $194,573.25.  The total amount of pre-judgment interest is $21,598.35.  The table below demonstrates the Court's calculations:

2002: $172,974.90 x 4% = $6,919.00 + $172,974.90 = $179,893.90
2003: $179,893.90 x 4% = $7,195.76 + $179,893.90 = $187,089.66
2004: $187,089.66 x 4% = $7,483.59 + $187,089.66 = $194,573.25

## II.   POST-JUDGMENT INTEREST.

Turning to the award of post-judgment interest, the parties agree that the Court must look to § 1961 for the proper rate.  See Transcript of Hearing at 12:17-14:5.  Section 1961 requires that the Court award post-judgment interest at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.  The week ending December 31, 2004 was the week that preceded the date of the judgment, which was filed on January 6, 2005 and entered on the docket on January 7, 2005.  The weekly average one-year constant maturity Treasury yield for the week ending December 31, 2004, was 2.77%.  See Board of Governors of the Federal Reserve System, Federal Reserve Statistical Release for January 3, 2005, at http://www.federalreserve.gov/releases/h15/20050103/ (last accessed on April 5, 2006).  Because § 1961 is mandatory, the Court will award post-judgment interest at a rate of 2.77% on Kelley's damages award plus pre-judgment interest, including attorney's fees and costs from the point at which each was quantified and reduced to a judgment.  See Bancamerica Commer. Corp. v. Mosher Steel,

103 F.3d at 81-82; <u>Midamerica Federal Sav. & Loan Ass'n v. Shearson/American Express, Inc.</u>, 962 F.2d at 1476.

**IT IS ORDERED** that the Plaintiff's Motion and Memorandum Requesting Pre- and Post-Judgment Interest is granted in part and denied in part. The Defendant City of Albuquerque shall pay $21,598.35 in pre-judgment interest. The Defendant City of Albuquerque shall also pay post-judgment interest at a rate of 2.77% on Kelley's damages award plus pre-judgment interest, including attorney's fees and costs from the point at which each was quantified and reduced to a judgment.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Steven K. Sanders
Law Offices of Steven K. Sanders
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Kevin M. Brown
Daniel J. Macke
Brown and German
Albuquerque, New Mexico

     *Attorneys for the Defendant*